No. 23-1269

# In the U.S. Court of Appeals for the District of Columbia Circuit

IN RE PETER WIILIAMS,
*Petitioner,*

## PETITION FOR A WRIT OF MANDAMUS

Lawrence J. Joseph, DC Bar #464777
Law Office of Lawrence J. Joseph
1250 Connecticut Ave., NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Petitioner Peter Williams*

# TABLE OF CONTENTS

Table of Contents ................................................................................ i

Table of Authorities ........................................................................... ii

Addendum ........................................................................................ vii

Glossary ............................................................................................ ix

Introduction ....................................................................................... 1

Relief Requested ................................................................................ 2

Jurisdiction ........................................................................................ 3

Statement of Issues ............................................................................ 5

Statutes and Regulations .................................................................... 6

Statement of the Case ........................................................................ 6

Standard of Review ............................................................................ 8

Reasons the Petition Should Be Granted ............................................ 9

I.      The right to mandamus relief is clear and indisputable ............... 10

        A.      Jurisdiction exists in this Court under § 307(b)(1). ........... 10

                1.      § 307(b)(1)'s 60-day limit does not bar this action. ........ 11

                2.      § 307(d) does not apply to this action, which distinguishes
                        most of this Court's precedents under § 307(b)(1). ............... 13

        B.      EPA clearly and indisputably erred in denying Williams' HFC
                application. ....................................................................... 17

                1.      EPA erroneously conflated Williams' trade name with a
                        separate corporation. ................................................... 17

                2.      EPA erroneously conflated Williams with a corporation. ........ 17

                3.      EPA erroneously applied § 84.15(c)(2) to Williams. ............ 19

                        a.      Williams did not share "corporate or common
                                ownership" with RMS of Georgia. .................................. 19

                        b.      Williams did not share "familial relations" with RMS
                                of Georgia. .............................................................. 19

                        c.      Williams did not share "corporate affiliation" with
                                RMS of Georgia. .......................................................... 20

i

C.  Although Williams complied with the spirit of § 307(d)(5), neither EPA nor this Court can rely on the requirements of § 307(d)(7)(B) because the APA—and not § 307(d)—applies here. ..........................22

II.  No other adequate means exist to obtain relief. .............................22

III.  Mandamus is appropriate under the circumstances.......................................23

A.  EPA's initial denial was clearly erroneous. .................................23

B.  EPA's inaction on Williams' administrative petitioners abuses any EPA discretion and demonstrates bad faith. .......................................24

C.  The *TRAC* factors are met. ..................................................................25

1.  EPA's 18-month delay in correcting its immediately obvious error is unreasonable. ..................................................26

2.  EPA's delay violates the APA's requirement to act within a "reasonable time" and the Clean Air Act's requirement for releasing allocations by October 1. ...........................................27

3.  Federal interests in equity require expediting this action. ........27

4.  No competing EPA activities displace this Court's review.......28

5.  EPA's inaction irreparably harms Williams. ...........................28

6.  The Court should consider EPA's bad faith. ............................29

Reasons Declaratory Relief Should Issue ..................................................................29

Conclusion ..........................................................................................................29

## TABLE OF AUTHORITIES

## CASES

*Bankers Life & Cas. Co. v. Holland*,
    346 U.S. 379 (1953) ........................................................................22

*BellSouth Corp. v. FCC*,
    162 F.3d 678 (D.C. Cir. 1998)........................................................18

*Business Roundtable v. SEC*,
    905 F.2d 406 (D.C. Cir. 1990)........................................................18

*California v. Texas*,
    141 S.Ct. 2104 (2021) ......................................................................5

*Cheney v. U.S. Dist. Court*,
    542 U.S. 367 (2004) .......................................................................... 8-9, 23-24

*Ciba-Geigy Corp. v. EPA*,
    801 F.2d 430 (D.C. Cir. 1986) ........................................................... 10

*City of Waukesha v. EPA*,
    320 F.3d 228 (D.C. Cir. 2003) ........................................................... 10

*Cort v. Ash*,
    422 U.S. 66 (1975) ............................................................................ 18

*Davis v. United States EPA*,
    348 F.3d 772 (9th Cir. 2003) ............................................................. 14

*Dep't of Commerce v. New York*,
    139 S.Ct. 2551 (2019) ....................................................................... 24

*Dickinson v. Zurko*,
    527 U.S. 150 (1999) .......................................................................... 15

*Doe v. McMaster*,
    355 S.C. 306 (2003) .......................................................................... 18

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
    824 F.3d 507 (5th Cir. 2016) ............................................................. 9

*Envtl. Integrity Project v. EPA*,
    864 F.3d 648 (D.C. Cir. 2017) ........................................................... 15

*FTC v. Dean Foods Co.*,
    384 U.S. 597 (1966) .......................................................................... 9

*Garcia v. Veneman*,
    224 F.R.D. 8 (D.D.C. 2004) .............................................................. 24

*In re American Rivers & Idaho Rivers United*,
    372 F.3d 413 (D.C. Cir. 2004) ........................................................... 26

*In re Baluchi*,
    952 F.3d 363 (D.C. Cir. 2020) ........................................................... 28

*In re Bluewater Network*,
    234 F.3d 1305 (D.C. Cir. 2000) .................................................... 4, 9, 11

*In re Clinton*,
    973 F.3d 106 (D.C. Cir. 2020) ........................................................... 23

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) ........................................................... 23

*In re Tennant*,
    359 F.3d 523 (D.C. Cir. 2004) .......................................................... 5

*In re UMW Int'l Union*,
    190 F.3d 545 (D.C. Cir. 1999) ................................................... 25-26

*Land v. Dollar*,
    330 U.S. 731 (1947) ...................................................................... 29

*MCI Telecomms. Corp. v. Fed'l Commc'ns Comn'n*,
    627 F.2d 322 (D.C. Cir. 1980) ..................................................... 11

\* *Mexichem Specialty Resins, Inc. v. EPA*,
    787 F.3d 544 (D.C. Cir. 2015) ............................................ 3-4, 12-13

\* *Miller v. Harco Nat'l Ins. Co.*,
    274 Ga. 387 (2001) ...................................................................... 18

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
    551 U.S. 644 (2007) ...................................................................... 15

\* *Nat'l Labor Relations Bd. Union v. Fed. Labor Relations Auth.*,
    834 F.2d 191 (D.C. Cir. 1987) ..................................................... 15

*Orange, S.A. v. U.S. Dist. Court*,
    818 F.3d 956 (9th Cir. 2016) .................................................... 9-10

*Osborn v. Bank of United States*,
    22 U.S. (9 Wheat.) 738 (1824) ..................................................... 10

\* *Powell v. McCormack*,
    395 U.S. 486 (1969) ................................................................... 5, 9

*PPG Indus., Inc. v. Costle*,
    659 F.2d 1239, 1241 (D.C. Cir. 1981) ......................................... 14

*President v. Vance*,
    627 F.2d 353 (D.C. Cir. 1980) ................................................. 9, 29

*RMS of Ga., LLC v. United States EPA*,
    64 F.4th 1368 (11th Cir. 2023) ............................................... 12-13

*Schlesinger v. Councilman*,
    420 U.S. 738 (1975) ...................................................................... 15

*Sierra Club v. Gorsuch*,
    715 F.2d 653 (D.C. Cir. 1983) .................................................. 10-11

\* *Sierra Club v. Thomas*,
    828 F.2d 783 (D.C. Cir. 1987) ...................................... 3-4, 16, 26

iv

*Steel Co. v. Citizens for a Better Env't.*,
    523 U.S. 83 (1998) ........................................................................10

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ........................................................................5

\* *Telecommunications Res. & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984)............................................ 23, 25-29

*Teva Pharm. USA, Inc. v. Sebelius*,
    595 F.3d 1303 (D.C. Cir. 2010)....................................................11

*Tierney v. Schweiker*,
    718 F.2d 449 (D.C. Cir. 1983).............................................. 8-9, 28

*Tr. Co. of Ga. v. State*,
    109 Ga. 736 (1900) ........................................................................18

*Tulare Irrigation Dist. v. Shepard*,
    185 U.S. 1 (1902) ..........................................................................18

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ........................................................................24

*United States v. Scantlebury*,
    921 F.3d 241 (D.C. Cir. 2019).......................................................5

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983) ......................................................................10

*Will v. United States*,
    389 U.S. 90 (1967) ..........................................................................9

*Zukerman v. United States Postal Serv.*,
    64 F.4th 1354 (D.C. Cir. 2023) ......................................................5

## STATUTES

Administrative Procedure Act,
    5 U.S.C. §§ 551-706 .................................... 5, 13-16, 22, 27

5 U.S.C. § 551(13) ..........................................................................16

5 U.S.C. § 553 ........................................................................... 14-15

5 U.S.C. § 554 ........................................................................... 14-15

5 U.S.C. § 555 ........................................................................... 14-15

5 U.S.C. § 555(b) .......................................................... 13, 15-16, 27

5 U.S.C. § 555(e) ............................................................................16

5 U.S.C. § 556 ............................................................................ 14-15

5 U.S.C. § 557 ............................................................................ 14-15

\* 5 U.S.C. § 559 ...............................................................................15

5 U.S.C. § 705 ........................................................................1, 6, 28

5 U.S.C. § 706 ...............................................................................14

\* 5 U.S.C. § 706(1) .................................................... 1-2, 6, 11, 16

28 U.S.C. § 1361 .............................................................................3

All Writs Act,
    28 U.S.C. § 1651(a) .......................................................... 1-2, 6

Declaratory Judgment Act,
    28 U.S.C. §§ 2201-2202 ........................................................2, 5

28 U.S.C. § 2201(a) ............................................... 1, 4-5, 8, 11

28 U.S.C. § 2202 .....................................................................2, 5

Clean Air Act,
    42 U.S.C. §§7401-7671q ....................... 1, 3, 13-15, 26, 28

42 U.S.C. § 7604(a)(2) ............................................................ 3, 12

\* 42 U.S.C. § 7607(b)(1)........................................ 1, 3-5, 10-14, 16

42 U.S.C. § 7607(d) .......................................... 5, 13-16, 22

42 U.S.C. § 7607(d)(1)(A)-(U) ......................................14

42 U.S.C. § 7607(d)(1)(V) .......................................... 14-15

42 U.S.C. § 7607(d)(5)(iv)..........................................22

42 U.S.C. § 7607(d)(7)(A) ..........................................14

42 U.S.C. § 7607(d)(7)(B) .........................................5, 14, 16, 22

American Innovation and Manufacturing Act,
    42 U.S.C. § 7675.............................................................1, 7

42 U.S.C. § 7675(e) ....................................................4, 23, 28

42 U.S.C. § 7675(e)(2)(D)(i) ....................................1, 8, 27

42 U.S.C. § 7675(k)(1)(c) ..........................................1

Pub. L. No. 101-549, § 707(f),
　　104 Stat. 2399, 2683 (1990) ...............................................3, 16, 26

## LEGISLATIVE HISTORY

S. Rep. No. 101-228 (1989) ........................................................... 3-4, 12

## RULES AND REGULATIONS

40 C.F.R. § 84.3 .................................................................................17

\* 40 C.F.R. § 84.15(c)(2) ................................................................ 19-21, 24

40 C.F.R. § 84.15(d)(2)(ii)...............................................................25

Exec. Order 12,898, 59 Fed. Reg. 7629 (Feb. 11, 1994)........................................27

Exec. Order 14,008, 86 Fed. Reg. 7619 (Feb. 1, 2021)..........................................27

*Phasedown of Hydrofluorocarbons: Notice of 2022 Set-Aside Pool Allowance
　　Allocations for Production and Consumption of Regulated Substances under
　　the American Innovation and Manufacturing Act of 2020*, 87 Fed. Reg.
　　19,683 (Apr. 5, 2022) .....................................................................7

*Phasedown of Hydrofluorocarbons: Notice of 2023 Allowance Allocations for
　　Production and Consumption of Regulated Substances under the American
　　Innovation and Manufacturing Act of 2020*, 87 Fed. Reg. 61,314 (Oct. 11,
　　2022) ............................................................................. 7-8

## OTHER AUTHORITIES

New Era Group, Inc.'s Certificate of Parties, Rulings Under Review, and Related
　　Cases Pursuant to Circuit Rule 28(a)(l) *New Era Grp., Inc. v. EPA*, 2014
　　U.S. App. LEXIS 19027 (D.C. Cir. Oct. 3, 2014) (No. 14-1054)................21

## ADDENDUM

Statement of Parties, Rulings, and Related Cases ...................................................1a

Corporate Disclosure Statement ..........................................................2a

5 U.S.C. § 555(b) .........................................................................4a

5 U.S.C. § 559 ...........................................................................4a

5 U.S.C. § 705 ...........................................................................4a

5 U.S.C. § 706 ...........................................................................5a

28 U.S.C. § 1651(a) ................................................................5a

28 U.S.C. § 2201(a) ................................................................5a

28 U.S.C. § 2202 ....................................................................6a

42 U.S.C. § 7675(k)(1)(C) ......................................................6a

42 U.S.C. § 7607(b) ................................................................6a

42 U.S.C. § 7607(d)(1)............................................................7a

42 U.S.C. § 7607(d)(5)............................................................9a

42 U.S.C. § 7607(d)(7)(B) .....................................................10a

40 C.F.R. § 84.15(c) ..............................................................10a

Application of Peter Williams ................................................11a

Letter from Cynthia A. Newburg, Director, Stratospheric Protection
    Division, Environmental Protection Agency, to Peter Williams (Mar.
    31, 2022)...........................................................................18a

Phasedown of Hydrofluorocarbons: Notice of 2022 Set-Aside Pool
    Allowance Allocations for Production and Consumption of Regulated
    Substances under the American Innovation and Manufacturing Act of
    2020, 87 Fed. Reg. 19,683 (Apr. 5, 2022)........................20a

Letter from J. Gordon Arbuckle to Cynthia A. Newburg, Director,
    Stratospheric Protection Division, Environmental Protection Agency
    (Apr. 20, 2022) .................................................................25a

Phasedown of Hydrofluorocarbons: Notice of 2023 Allowance Allocations
    for Production and Consumption of Regulated Substances under the
    American Innovation and Manufacturing Act of 2020, 87 Fed. Reg.
    61,314 (Oct. 11, 2022)......................................................30a

Letter from Lawrence J. Joseph to Cynthia A. Newburg, Director,
    Stratospheric Protection Division, and Hans Christopher Grundler,
    Director, Office of Atmospheric Programs, Environmental Protection
    Agency (Dec. 12, 2022).....................................................35a

Letter from Kenneth Ponder, President, RMS of Georgia, LLC, to Cynthia
    A. Newburg, Director, Stratospheric Protection Division,
    Environmental Protection Agency (Dec. 29, 2022) ..........44a

Declaration of Peter Williams (Apr. 24, 2023)......................169a

*RMS of Georgia, LLC, d/b/a Choice Refrigerants v. Environmental Protection Agency*, Nos. 22-1025, 22-1313, 22-1314 (D.C. Cir. July 7, 2023) ................................................................................................. 193a

## <u>GLOSSARY</u>

| | |
|---|---|
| Add. | Addendum |
| APA | Administrative Procedure Act, 5 U.S.C. §§ 551-706 |
| HFC | hydrofluorocarbon |
| EPA | Environmental Protection Agency |

## INTRODUCTION

In this case of mistaken identity, petitioner Peter Williams respectfully petitions this Court pursuant to 42 U.S.C. § 7607(b)(1), 5 U.S.C. § 706(1), and 28 U.S.C. § 1651(a) to issue a writ of mandamus to respondents Environmental Protection Agency and its Administrator (collectively, "EPA") directing EPA not only to grant Williams' long-pending administrative petition for reconsideration of EPA's denial of Williams' application as a new-market entrant in the hydrofluorocarbon ("HFC") allocation program established under the under the American Innovation and Manufacturing Act, 42 U.S.C. § 7675, but also to grant Williams' underlying application as a new-market entrant. For purposes of judicial review, the American Innovation and Manufacturing incorporates the Clean Air Act's provisions for judicial review. 42 U.S.C. § 7675(k)(1)(c). Because EPA must issue annual HFC allocations by October 1 of the prior year, 42 U.S.C. § 7675(e)(2)(D)(i), Williams asks the Court expeditiously to grant the requested relief, although a subsequent motion pursuant to 5 U.S.C. § 705 will ask the Court to order EPA to hold Williams' share of HFC allocations in reserve, rather than distribute them to other participants in the HFC program.

In summary, Williams expressly applied as an unincorporated individual (Add:12a, 17a), but EPA interpreted elements of his application—namely, his email's internet domain, a logo, and his trade name "New Era Group"—to mean that

he applied as a defunct Georgia corporation—New Era Group, Inc.—that EPA viewed an ineligible for the HFC program. Although Williams quickly petitioned EPA administratively through counsel to correct EPA's misunderstanding, EPA has not acted on that petition (or on follow-up correspondence) in almost 18 months, costing Williams hundreds of thousands of dollars that he likely cannot recover because of sovereign immunity and expiration of the annual HFC allocations.

## **RELIEF REQUESTED**

Pursuant to the 5 U.S.C. § 706(1) and 28 U.S.C. § 1651(a), petitioner Williams respectfully requests that this Court issue a writ of mandamus directing respondent EPA to grant Williams' petition for administrative reconsideration of the denial of Williams' application as a new market entrant in the HFC program and to grant his application.

To the extent that EPA has not granted Williams' administrative petition for reconsideration—and thus his HFC application as a new-market entrant—by the time that EPA issues an annual HFC allocation, petitioner Williams respectfully requests that this Court issue interim relief requiring EPA to hold in reserve the HFC allocation that would be due Williams if his application were granted.

In addition or in the alternative, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a), 2202, petitioner Williams respectfully requests that the Court issue the following declaratory and injunctive relief:

- Declare that Williams applied as an individual and, consequently, that his application did not require ownership or other corporate information about the applicant.

- Declare that Williams is entitled to have his HFC application as a new-market entrant granted.

- Enjoin EPA's issuing Williams' HFC allocations to other participants in the HFC program and provide Williams the HFC allocations previously denied to him with non-expired HFC allocations.

## JURISDICTION

Although mandamus actions typically commence in district courts, 28 U.S.C. § 1361, and actions to compel EPA to take certain nondiscretionary Clean Air Act actions also commence in district courts, 42 U.S.C. § 7604(a)(2), this Court has jurisdiction under 42 U.S.C. § 7607(b)(1) to review EPA's failure to grant Williams' administrative petition for reconsideration of EPA's denial of his HFC application. *See Sierra Club v. Thomas,* 828 F.2d 783, 792-97 (D.C. Cir. 1987), *abrogated in part on other grounds*, PUB. L. NO. 101-549, § 707(f), 104 Stat. 2399, 2683 (1990); *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 553 n.6 (D.C. Cir. 2015) (citing S. REP. NO. 101-228, at 374 (1989) for proposition that the 1990 amendments

to § 304 abrogated *Sierra Club v. Thomas* only "partly").[1] As the Senate Report

makes clear, inaction that refuses to modify a prior final action or that itself

constitutes a final refusal to act is reviewable in the courts of appeals:

> [W]here adjudication of a challenge to EPA inaction would
> effectively require a court to overturn final action previously taken
> by the EPA, jurisdiction over the challenge would [lie] in the court
> of appeals under section 307(b)(l). See *Indiana & Michigan
> Electric Co. v US. EPA*, 733 F. 2d 489, 490 (7th Cir. 1984) (courts
> of appeals have jurisdiction over cases where a complaint about
> agency inaction is "embedded" in a challenge to agency action). In
> addition, where the EPA inaction culminates in a formal decision
> not to take action, such a situation would constitute a "denial"
> within the meaning of APA section 551(13) and would likewise be
> reviewable in the courts of appeal under section 307(b)(1).

S. REP. NO. 101-228, at 374. Granting Williams' application would modify the entire

HFC allocation,[2] which triggers the first prong of jurisdiction over inaction that the

Senate Report and *Mexichem* identify as retained by the courts of appeals.

Once within this Court's jurisdiction for mandamus, the Court also "may

declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

---

[1]    But for the 1990 amendments moving some delay claims to district courts
nationwide under § 304(a), review of delay would be in the courts of appeals because
review of final action is in the courts of appeals. *In re Bluewater Network*, 234 F.3d
1305, 1310-11 (D.C. Cir. 2000).

[2]    Because EPA's HFC allocation program allocates a fixed annual "pie" or
baseline among applicants for HFC allocations, 42 U.S.C. § 7675(e), altering the
outcome of any application or even the amount of any single allocation would affect
the entire EPA final action for all allocations. *See* Section I.A, *infra*.

While "the Declaratory Judgment Act does not extend the jurisdiction of the federal courts," *United States v. Scantlebury*, 921 F.3d 241, 251 (D.C. Cir. 2019); *California v. Texas*, 141 S.Ct. 2104, 2115 (2021), a court *otherwise with jurisdiction* "may grant declaratory relief even though it chooses not to issue an injunction or mandamus." *Powell v. McCormack*, 395 U.S. 486, 499 (1969); *Steffel v. Thompson*, 415 U.S. 452, 457 n.7 (1974); *Zukerman v. United States Postal Serv.*, 64 F.4th 1354, 1366 (D.C. Cir. 2023); *In re Tennant*, 359 F.3d 523, 531 (D.C. Cir. 2004) ("declaratory judgment … could be entered only 'in a case of actual controversy within [our] jurisdiction'" such as mandamus under the All Writs Act) (quoting 28 U.S.C. § 2201(a), alteration in original). In addition, "[f]urther necessary or proper relief based on a declaratory judgment or decree may [also] be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." *Id.* § 2202.

## STATEMENT OF ISSUES

This petition presents the following issues:

1.     Whether this Court has statutory subject-matter jurisdiction over this action pursuant to 42 U.S.C. § 7607(b)(1)?

2.     Whether the limitations of judicial review in 42 U.S.C. § 7607(d)(7)(B) apply when EPA proceeds not under 42 U.S.C. § 7607(d) but rather under the APA?

3.      Whether 5 U.S.C. § 706(1) and 28 U.S.C. § 1651(a) authorize this Court to grant Williams the merits relief requested?

4.      Whether Williams applied for the HFC program as a natural person and, if so, whether EPA erred in finding him to have applied as a corporation?

5.      Whether Williams is entitled to have his HFC application granted?

6.      To the extent that this action does not resolve prior to an allocation date, whether EPA should reserve Williams' HFC allocations on an interim basis pursuant to 5 U.S.C. § 705 and 28 U.S.C. § 1651(a) to ensure their availability?[3]

## STATUTES AND REGULATIONS

The Addendum ("Add.") sets forth the relevant statutes and regulations.

## STATEMENT OF THE CASE

In 2009, Williams acquired the neweragroupinc.com domain and had the "The New Era Group, Inc." logo on his letterhead prepared. Williams Decl. ¶7 (Add:170a). He used his logo, neweragroupinc.com email, and "New Era Group" trade name in EPA comments and communications with EPA prior to the incorporation of New Era Group, Inc., of Georgia. *Id.* ¶¶9-10 & Exs. 1-2 (Add:170a, 175a-179a, 183a). As relevant here, he also used them in his HFC application, after New Era Group, Inc., of Georgia dissolved.

---

[3]     Once this action is docketed, Williams will move separately for interim relief. Notwithstanding that separate motion, interim relief is an issue presented here.

Although Williams applied for HFC allocations as an individual (Add:12a, 17a), EPA interpreted his "dba" tradename ("New Era Group") as referring to a defunct Georgia corporation, New Era Group, Inc. and denied his application by letter dated March 31, 2022 (Add:18a-19a) for lacking corporate information that EPA would require only for corporate applicants. EPA announced (but did not publish) its denial of Williams' application in the Federal Register notice for the 2022 allocations. *Phasedown of Hydrofluorocarbons: Notice of 2022 Set-Aside Pool Allowance Allocations for Production and Consumption of Regulated Substances under the American Innovation and Manufacturing Act of 2020*, 87 Fed. Reg. 19,683 (Apr. 5, 2022) (Add:20a-24a).

Through counsel, Williams petitioned EPA administratively to correct EPA's error (Add:25a-27a), but EPA has never taken final action. Williams supplemented his administrative petition through counsel by letter dated December 12, 2022 (Add:35a-43a), and RMS of Georgia—the company with which EPA believed Williams or New Era Group, Inc. had corporate relations—administratively petitioned EPA to correct its error by letter dated December 29, 2022 (Add:44a-47a). EPA did not act on the pending administrative petition in time to include Williams in the 2023 allocation, *Phasedown of Hydrofluorocarbons: Notice of 2023 Allowance Allocations for Production and Consumption of Regulated Substances under the American Innovation and Manufacturing Act of 2020*, 87 Fed. Reg. 61,314

(Oct. 11, 2022) (Add:30a-34a)., and EPA appears unlikely to do so with respect to the 2024 allocation that EPA must release by October 1, 2023. *See* 42 U.S.C. § 7675(e)(2)(D)(i).

On December 12, 2022, Williams petitioned this Court for review of EPA's 2023 allocation as constructively denying his administrative petition (No. 22-1314). A motions panel dismissed Williams's petition for review as an untimely challenge to EPA's action in the Federal Register on April 5, 2022 (Add:194a). Williams' petition for rehearing is pending, but the Court has not yet requested EPA's response.

## STANDARD OF REVIEW

Courts evaluate mandamus under three criteria. The first two require that the petitioning party has a "clear and indisputable" right to mandamus relief and no other adequate means to achieve the relief; the third requires that mandamus be appropriate under the circumstances. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004).

Declaratory relief is discretionary at all levels of the federal court system: "In a case of actual controversy within its jurisdiction, ... *any court of the United States*, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*." 28 U.S.C. § 2201(a) (emphasis added). Declaratory relief "will ordinarily be granted only when it will either 'serve a useful purpose in

8

clarifying the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Tierney v. Schweiker*, 718 F.2d 449, 456 (D.C. Cir. 1983) (interior quotation marks omitted); *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980); *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016). Even where jurisdiction is premised on mandamus, a court may issue a declaratory judgment along with or in lieu of mandamus. *Powell*, 395 U.S. at 499.

## REASONS THE PETITION SHOULD BE GRANTED

The All Writs Act codifies the inherent, common law power to direct lower tribunals' actions relevant to the issuing court's jurisdiction. *Cheney*, 542 U.S. at 380. As relevant here, the writ of mandamus enables federal appellate courts to ensure their *future jurisdiction* over the merits of the underlying agency action by compelling the agency to act. *FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966); *Bluewater Network*, 234 F.3d at 1310-11.

This power "has traditionally been used in the federal courts … to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Will v. United States*, 389 U.S. 90, 95 (1967) (interior quotations omitted). Thus, "under the All Writs Act, if we would have the power to entertain appeals at some stage of the proceedings, we have the power to issue writs of mandamus in the case." *Orange, S.A. v. U.S. Dist. Court*, 818

F.3d 956, 958 (9th Cir. 2016). Petitioner Williams respectfully submits that this Court should use the writ to compel EPA to act.

## I. THE RIGHT TO MANDAMUS RELIEF IS CLEAR AND INDISPUTABLE.

The first mandamus factor is the clarity of the petitioner's entitlement to relief, which includes jurisdiction as well as the merits.

### A. Jurisdiction exists in this Court under § 307(b)(1).

Before reaching the merits, appellate courts must evaluate their jurisdiction. *Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 95 (1998). In doing so, courts measure jurisdiction from the plaintiff's or petitioner's perspective: "'it is a sufficient foundation for jurisdiction, that the title or right set up by the party, may be defeated by one construction of the constitution or laws of the United States, and sustained by the opposite construction.'" *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 492 (1983) (quoting *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 822 (1824)); *see also Ciba-Geigy Corp. v. EPA,* 801 F.2d 430, 439 (D.C. Cir. 1986) ("we must assume the challenging party's view of the merits in determining ripeness"); *City of Waukesha v. EPA,* 320 F.3d 228, 235 (D.C. Cir. 2003) (same for standing);[4] *Sierra Club v. Gorsuch,* 715 F.2d 653, 658 (D.C. Cir.

---

[4]    Although the motion panel held that Williams lacked standing to challenge the entire HFC program if he were not in the program (Add:194a), that has nothing to do with Williams' obvious standing to acquire valuable HFC allocations by

1983) ("EPA's position—that final action has not been taken—does not affect our jurisdiction").

### 1.    § 307(b)(1)'s 60-day limit does not bar this action.

As set forth in Section I.B, *infra*, Williams is entitled to have EPA grant his petition for administrative reconsideration and thus to have EPA grant his HFC application. Under 5 U.S.C. § 706(1), this Court has the authority to order EPA to grant that relief, which EPA has unlawfully withheld. That relief—the granting of Williams petition and application—is what Williams seeks, and that relief would be final EPA action under § 307(b)(1) for which jurisdiction lies in this Court. 42 U.S.C. § 7607(b)(1).

In its *discretion* under 28 U.S.C. § 2201(a), this Court may view deciding the issue without EPA's prior input as "drastic" and thus prefer to remand to EPA to act on Williams' administrative petition and application. *MCI Telecomms. Corp. v. Fed'l Commc'ns Comn'n*, 627 F.2d 322, 345 (D.C. Cir. 1980). That discretion has no effect on this Court's indisputable *jurisdiction* to order what Williams asks here.[5]

Although the 1990 amendments transferred to the district courts actions to

---

seeking to reverse his exclusion from the HFC program. *See*, *e.g.*, *Teva Pharm. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1311 (D.C. Cir. 2010) (finding Article III case or controversy to secure valuable asset).

[5]    If the Court exercises its discretion to remand to EPA to address these issues in the first instance, this Court can retain jurisdiction, *Bluewater Network*, 234 F.3d at 1316, and should do so.

11

compel EPA to take certain nondiscretionary actions, 42 U.S.C. § 7604(a)(2), that

transfer does not apply to compelling final EPA action that alters existing EPA final

action reviewable under 42 U.S.C. § 7607(b)(1). *Mexichem*, 787 F.3d at 553 n.6; S.

REP. NO. 101-228, at 374. Nor could it. Transferring ultimate relief over granting an

allegedly nondiscretionary change to an existing EPA final action would transfer this

Court's—and the regional courts of appeals'—exclusive § 307(b)(1) jurisdiction to

district courts nationwide.

Granting Williams' application is not a simple binary yes-no decision that

affects only Williams:

> RMS's second argument has a similar theme. It argues that
> the Allocation Notice is not one big action but instead a
> document detailing many smaller individual actions.
> Viewed this way, RMS argues that it is challenging only
> its line-item in table 3, not table 3 as a whole or the other
> firm's allocations. But this argument presents too narrow a
> view of the EPA's final action. Rather, the Allocation
> Notice is better understood as one EPA action, and RMS's
> allocation an inseparable component of it. By placing a
> cap on allowances, Congress created a kind of "zero-sum"
> game for the HFC industry. Any gain in permits that one
> firm gets must be offset by a loss to another firm and vice
> versa. The Framework Rule's methodology bears this out.
> Recall again the formula in figure 1. While our version
> features RMS, each firm in table 3 is also subject to the
> same formula—just with its own three-year average in the
> numerator in place of RMS's. Of course, any shift in one
> firm's three-year average will change the output of that
> firm's formula. But it will also change every other firm's
> formula as well. This is because each firm's three-year
> average term appears not just in the numerator, but in the
> denominator as well and the denominator is shared across

> firms nationwide. Any shift in any single firm's three-year average demands a recalculation of the shared denominator and thus the formulas for every single firm listed in table 3. The EPA's Allocation Notice in table 3 is thus the result of a singular EPA action allocating HFC allowances nationwide, and RMS cannot isolate its individual component of it.

*RMS of Ga., LLC v. United States EPA*, 64 F.4th 1368, 1374 (11th Cir. 2023). Under the circumstances, Williams' petition here falls within the exception to the 1990 amendment that this Court recognized in *Mexichem*.

### 2. § 307(d) does not apply to this action, which distinguishes most of this Court's precedents under § 307(b)(1).

Section 307(b)(1) expressly contemplates administrative petitions for reconsideration, *see* 42 U.S.C. § 7607(b)(1), and the Administrative Procedure Act, 5 U.S.C. §§ 551-706 ("APA") authorizes interested persons to present, adjust, or determine issues, requests, or controversies, which—"[w]ith due regard for the convenience and necessity of the parties … and within a reasonable time"—the "agency shall proceed to conclude." 5 U.S.C. § 555(b). A motions panel of this Court dismissed Williams' Petition for Review based on § 307(b)(1)'s 60-day limit for judicial review. Williams respectfully submits that the order mistakenly applied Circuit precedent under the abbreviated provisions of § 307(d) to EPA action under the APA.

Where they apply, the provisions of § 307(d) of the Clean Air Act expressly

supplant certain APA provisions.[6] Where § 307(d) *applies*, it provides procedural barriers to seeking administrative reconsideration of EPA action, 42 U.S.C. § 7607(d)(7)(B), and places limits on the administrative record for review of EPA action. *Id.* § 7607(d)(7)(A). Where § 307(d) *does not apply*, its provisions obviously do not apply. *Davis v. United States EPA*, 348 F.3d 772, 785 (9th Cir. 2003). Williams respectfully submits that this Court's precedents on § 307(b)(1) fail to consider the important distinction between EPA's proceeding under § 307(d) versus EPA's proceeding under the APA.

This Court has recognized that the Clean Air Act provides two alternate paths by which EPA action under the Clean Air Act may proceed: the APA and § 307(d)'s alternate provisions. *See PPG Indus., Inc. v. Costle*, 659 F.2d 1239, 1241, 1250-51 (D.C. Cir. 1981) (recognizing that § 307(d) and APA are distinct and different processes by which EPA and a reviewing court may proceed). Here, § 307(d) does not apply by operation of law, *see* 42 U.S.C. § 7607(d)(1)(A)-(U) (list of EPA actions statutorily subject to § 307(d)), and neither EPA's Federal Register noticed dated April 5, 2022, nor its letter to Willaims dated March 31, 2022, exercised EPA's discretion to apply the provisions of § 307(d) of the Clean Air Act. *See id.* §

---

[6]    Specifically, § 307(d) expressly supplants 5 U.S.C. §§ 553-557, 706, which concern rulemakings, *see* 5 U.S.C. § 553, adjudications, *see id.* §§ 554-557, and judicial review. *See id.* § 706.

7607(d)(1)(V) (allowing EPA to designate any EPA action to follow the procedures of § 307(d)). As such, § 307(d) does not apply, period.

For statutes—such as the Clean Air Act—that are or were enacted after the APA's enactment, the APA applies unless expressly exempted. *See* 5 U.S.C. § 559; *Dickinson v. Zurko*, 527 U.S. 150, 154-55 (1999). The Clean Air Act expressly exempts only those EPA actions subject to the provisions of § 307(d) from the indicated provisions of the APA (*i.e.*, 5 U.S.C. §§ 553-557, 706). *See id.*; *Envtl. Integrity Project v. EPA*, 864 F.3d 648, 649 (D.C. Cir. 2017) (Clean Water Act). Even if this were a close case, repeals by implication are disfavored, *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007), and "this canon of construction applies with particular force when the asserted repealer would remove a remedy otherwise available." *Schlesinger v. Councilman,* 420 U.S. 738, 752 (1975). By negative implication of the Clean Air Act's express terms in § 307(d), as well as pursuant to 5 U.S.C. § 559, the APA generally and 5 U.S.C. 555, 706 specifically remain applicable to EPA action under the Clean Air Act that falls outside the provisions of § 307(d).

Under the APA, interested parties like Williams may petition agencies to take or adjust agency action, which agencies must conclude within a reasonable time:

> So far as the orderly conduct of public business permits, an interested person may appear before an agency or its responsible employees for the *presentation, adjustment, or determination of an issue, request, or controversy in a proceeding*, whether

15

> interlocutory, summary, or otherwise, or in connection with an agency function. With due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time, each agency shall proceed to conclude a matter presented to it*.

5 U.S.C. § 555(b) (emphasis added). Agencies also must give "prompt" notice "of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding." *Id.* § 555(e).

Under the APA, a "reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Significantly, the action reviewed when EPA acts (or fails to act[7]) on a petition for reconsideration under the APA is the latter act (or failure to act) of withholding or denying reconsideration, not the original action that a petitioner asks an agency to reconsider. *Nat'l Labor Relations Bd. Union v. Fed. Labor Relations Auth.,* 834 F.2d 191, 195-196 (D.C. Cir. 1987); *cf. Sierra Club v. Thomas,* 828 F.2d at 792-97, *abrogated in part on other grounds*, PUB. L. NO. 101-549, § 707(f), 104 Stat. at 2683. Simply put, § 307(b)(1)'s 60-day clock has not yet begun to run on EPA's failure to grant Williams' petition for administrative reconsideration.[8]

---

[7]    Agency "action" includes inaction. 5 U.S.C. § 551(13).

[8]    If § 307(d) applied, the 60-day window would have begun on April 5, 2022. *See* 42 U.S.C. § 7607(d)(7)(B). But since § 307(d) does not apply, see Section I.A.2, *supra*, § 307(d)(7)(B) does not apply either.

16

**B.      EPA clearly and indisputably erred in denying Williams' HFC application.**

Williams has explained that he applied as an individual, Affidavit of Peter Williams, ¶ 4 (Apr. 20, 2022) (Add:28a); Declaration of Peter Williams ¶ 14 (Apr. 24, 2023) (Add:171a-172a), so EPA's treating his application as a corporate application is error. In addition to being factually wrong, EPA's interpretation is also legally impossible.

**1.      EPA erroneously conflated Williams' trade name with a separate corporation.**

Since 2008, Williams has done business as "New Era Group" in South Carolina. Affidavit of Peter Williams, ¶ 2 (Apr. 20, 2022) (Add:28a). Notwithstanding the similarity of the two names, Williams' application clearly indicates that the individual applicant is unincorporated (Add:12a, 17a). The HFC regulations clearly recognize that individuals are not corporations. 40 C.F.R. § 84.3 (defining "person" to include not only individuals but also corporations). EPA thus erred in assuming that Williams was applying as "New Era Group, Inc." of Georgia.

**2.      EPA erroneously conflated Williams with a corporation.**

Even without EPA's mistaken factual belief that Williams' "dba" or trade name referred to the Georgia corporation named "New Era Group, Inc.," EPA's conflation of Williams with a corporation erred on a more basic level. With

17

exceptions not relevant here,[9] an individual cannot "do business as" a corporation.

Indeed, even if Williams owned the nonprofit "New Era Group, Inc." of Georgia—which he never did—his use of "New Era Group" as a "dba" or trade name would not equate the corporation with the trade name: "An individual doing business under a trade name is clearly a sole proprietor distinct under Georgia law from a corporation in which that individual holds stock." *Miller v. Harco Nat'l Ins. Co.*, 274 Ga. 387, 390 (2001); *see also BellSouth Corp. v. FCC*, 162 F.3d 678, 684 (D.C. Cir. 1998) ("it is obvious that there are differences between a corporation and an individual under the law"). Moreover, "[c]orporations are creatures of state law," *Cort v. Ash*, 422 U.S. 66, 84 (1975); *Business Roundtable v. SEC*, 905 F.2d 406, 412 (D.C. Cir. 1990); *Doe v. McMaster*, 355 S.C. 306, 313 (2003); *Tr. Co. of Ga. v. State*, 109 Ga. 736, 755 (1900), and no relevant provision of law equates individuals with corporations.

Both before and after the existence of "New Era Group, Inc." of Georgia, Williams did business under the trade name "New Era Group." That cannot make

---

[9]    The exception proves the rule. It is possible for an individual to be a corporation *de facto* even if the individual is not a corporation *de jure*, *Tulare Irrigation Dist. v. Shepard*, 185 U.S. 1, 13-14 (1902), but that requires specific findings (*e.g.*, an attempt to incorporate under an applicable state corporation law and actual use of the corporate franchise), *id.*, none of which were met here. All that Williams did here was use an email address that included "inc" in it, based on his plans to incorporate some day in the future. That does not make Williams a corporation *de facto*.

Williams a corporation, and it does not make him "New Era Group, Inc." of Georgia.

### 3.    EPA erroneously applied § 84.15(c)(2) to Williams.

In pertinent part, § 84.15(c)(2) limits new-entrant allocations to "[p]ersons who … do not share corporate or common ownership, corporate affiliation in the past five years, or familial relations with entities receiving allowances through this rule." 40 C.F.R. § 84.15(c)(2). EPA cited this provision to deny Williams' application, based on the perceived relationship between "New Era Group, Inc." of Georgia and RMS of Georgia (Add:18a). Given EPA's conflation of Williams and "New Era Group, Inc." of Georgia, EPA also derivatively found the application incomplete in that it did not provide certain information related to "New Era Group, Inc." of Georgia (Add:19a).

### a.    Williams did not share "corporate or common ownership" with RMS of Georgia.

The first potentially pertinent clause of § 84.15(c)(2) withholds new-entrant status for sharing "corporate or common ownership" with an entity already receiving HFC allocations. There is no suggestion in the Georgia corporate materials that EPA located to suggest that either Williams or his trade name—"New Era Group" of South Carolina—owns any part either of "New Era Group, Inc." of Georgia or of RMS of Georgia.

### b.    Williams did not share "familial relations" with RMS of Georgia.

The third potentially pertinent clause of § 84.15(c)(2) withholds new-entrant

status for sharing "familial relations" with an entity already receiving HFC allocations. There is no suggestion in the non-record materials that EPA located to suggest a familial relationship with RMS of Georgia.

###        c.        Williams did not share "corporate affiliation" with RMS of Georgia.

Significantly, because Williams' use of the trade name or dba "New Era Group" does not make him "New Era Group, Inc." of Georgia, even Williams' past relationship with New Era Group, Inc. of Georgia cannot disqualify Williams from the HFC program. Specifically, § 84.15(c)(2)'s second potentially pertinent clause withholds new-entrant status for sharing "corporate affiliation" with an entity already receiving HFC allocations. Given the utter lack of evidence of either familial or ownership relationships under the first or third clauses, the second clause must be the basis for EPA's action.

This second clause does not disqualify Williams as an individual because "New Era Group, Inc." of Georgia was not itself an "entit[y] receiving allowances through this rule." 40 C.F.R. § 84.15(c)(2). Having a consultant like Williams and principals from industry stakeholders like RMS of Georgia participate in the same nonprofit does not make the consultants or the nonprofit itself an "entit[y] receiving

allowances through this rule" for purposes of § 84.15(c)(2).[10] It may well be that the relationship between "New Era Group, Inc." of Georgia and RMS of Georgia would preclude "New Era Group, Inc." of Georgia from receiving a new-entrant allocation, but that is irrelevant to whether Williams or his trade name—"New Era Group" of South Carolina—shared a "corporate affiliation" with RMS of Georgia.

In mathematical terms, § 84.15(c)(2)'s "corporate affiliation" prong is not transitive. The twin facts that (a) Williams may have had a "corporate affiliation" with New Era Group, Inc., and (b) New Era Group, Inc., may have had a "corporate affiliation" with RMS of Georgia, does not mean that Williams has a "corporate affiliation" with RMS of Georgia. To the contrary, under the plain terms of EPA's regulation, the "corporate affiliation" must be with the "entit[y] receiving allowances through this rule." 40 C.F.R. § 84.15(c)(2). New Era Group, Inc. cannot bridge the gap between Williams and RMS of Georgia because New Era Group, Inc. itself is not an "entit[y] receiving allowances through this rule." 40 C.F.R. § 84.15(c)(2).

---

[10]    New Era Group, Inc. was "a nonprofit organization that represents the interests of hydrochlorofluorocarbon-22 reclaimers and producers of alternative refrigerants." New Era Group, Inc.'s Certificate of Parties, Rulings Under Review, and Related Cases Pursuant to Circuit Rule 28(a)(l), at 1, *New Era Grp., Inc. v. EPA*, 2014 U.S. App. LEXIS 19027 (D.C. Cir. Oct. 3, 2014) (No. 14-1054).

**C.**     **Although Williams complied with the spirit of § 307(d)(5), neither EPA nor this Court can rely on the requirements of § 307(d)(7)(B) because the APA—and not § 307(d)—applies here.**

Even under § 307(d)'s truncated administrative procedures, EPA must "keep the record of such proceeding open for thirty days after completion of the proceeding to provide an opportunity for submission of rebuttal and supplementary information." *Id.* § 7607(d)(5)(iv). By petitioning for administrative reconsideration on April 20, 2022, with the corrective information that he applied as a natural person, not as a corporation, Williams complied with the spirit of § 307(d).

If § 307(d) has actually applied, the 60-day window would have begun on April 5, 2022. *See* 42 U.S.C. § 7607(d)(7)(B). But since § 307(d) does not apply, *see* Section I.A.2, *supra*, § 307(d)(7)(B) does not apply either. As such, Williams has no 60-day problem with seeking review of APA action that EPA has not yet formally taken.

## II.     NO OTHER ADEQUATE MEANS EXIST TO OBTAIN RELIEF.

The second mandamus criterion requires the lack of an adequate alternate remedy: "whatever may be done without the writ may not be done with it." *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953). Unless Williams' petition for administrative reconsideration and underlying application are granted expeditiously, EPA will issue the 2024 and subsequent allocations to other participants in the HFC program, thereby making relief to Williams impossible because Congress mandated

a fixed amount of overall HFC allocations. *See* 42 U.S.C. § 7675(e). While Williams can seek interim relief to preserve his slice of that "pie" as part *of this action*, he cannot wait for EPA to act, then seek allocations that EPA already has distributed.

## III.   MANDAMUS IS APPROPRIATE UNDER THE CIRCUMSTANCES.

Even when petitioners meet the first two criteria, mandamus also requires that the writ be appropriate under the "totality of the circumstances." *In re Clinton*, 973 F.3d 106, 117-18 (D.C. Cir. 2020). Although this Court's mandamus decisions do not address his third criterion in depth, several different circumstances that make mandamus appropriate, including the following as relevant here: (1) avoiding future legal error and eliminating uncertainty in important areas of the law, *Clinton*, 973 F.3d at 118; (2) clear abuses of discretion, *Cheney*, 542 U.S. at 380; and (3) the six-factor *TRAC* test for agency action unreasonably delayed or unlawfully withheld. *Telecommunications Res. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*"). For all these reasons, mandamus is appropriate under the circumstances.

### A.    EPA's initial denial was clearly erroneous.

Preventing clear error and correcting "deeply flawed view[s]" of the law are one rationale that makes mandamus appropriate. *Clinton*, 973 F.3d at 118; *accord In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 763 (D.C. Cir. 2014). EPA's legal thinking about corporations is "deeply flawed" here and requires correction to avoid EPA's repeating it. *See* Section I.B, *supra*.

23

To be sure, "New Era Group, Inc." of Georgia and RMS of Georgia may have precluded "New Era Group, Inc." of Georgia from receiving a new-entrant allocation, but New Era Group, Inc. of Georgia is defunct and did not apply to participate in the HFC program. New Era Group, Inc. cannot bridge the gap between Williams and RMS of Georgia because New Era Group, Inc. itself is not an "entit[y] receiving allowances through this rule," 40 C.F.R. § 84.15(c)(2), and nothing about a nonprofit's overlapping directors or officers would change that. *United States v. Bestfoods*, 524 U.S. 51, 68-70 (1998).This facet of EPA's error represents another reason mandamus is appropriate to address EPA's apparent or feigned ignorance of corporate law.

### B.    EPA's inaction on Williams' administrative petitioners abuses any EPA discretion and demonstrates bad faith.

EPA has clearly abused its discretion in not correcting its now-obvious error, and mandamus is appropriate to correct abuses of discretion. *Cheney*, 542 U.S. at 380. A court can—and Williams does—draw negative inferences from EPA's refusal to correct an obvious error, even after EPA staff's conclusion has been shown to be factually wrong and legally impossible. *Garcia v. Veneman*, 224 F.R.D. 8, 12 (D.D.C. 2004) ("a pattern of notice and refusal to correct can serve as proof of the intent element in [a] … discrimination case"). Courts "are not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Commerce v. New York*, 139 S.Ct. 2551, 2575 (2019) (internal quotation marks omitted). This Court should not

24

allow EPA staff to continue to abuse discretion, whatever their reason for harming Williams.

Significantly, Williams accused EPA of appearing to discriminate against him as the only person of African descent in the HFC applicant pool specifically and in EPA's HFC and refrigerant policies generally. Relying on applicant data that merely recorded whether applicants were "a woman- or minority-owned business," 40 C.F.R. § 84.15(d)(2)(ii), EPA argued that it had not discriminated. Respondents' Opp'n to Petitioner Peter Williams's Mot. for Summ. Vacatur, at 20 (Apr. 17, 2023) (No. 22-1314). EPA's response appears to double down on "some of my best friends are Black," ending up at "some of my best friends are not white or male." In any event, EPA did not address the charge of anti-Black discrimination. To the contrary, EPA's non-responsive response to a serious charge was insulting.

## C.     The *TRAC* factors are met.

For certain unreasonable-delay claims, a central question is "whether the agency's delay is so egregious as to warrant mandamus." *TRAC*, 750 F.2d at 80. This Circuit has devised "hardly ironclad, [but] … nevertheless … useful guidance" for evaluating inaction:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the

> sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (interior quotation marks and citations omitted); *see also In re UMW Int'l Union*, 190 F.3d 545, 551 (D.C. Cir. 1999) (applying *TRAC* factors to determine whether to issue writ of mandamus). This analysis also applies to the Clean Air Act. *Sierra Club v. Thomas*, 828 F.2d at 792-96, *abrogated in part on other grounds*, Pub. L. No. 101-549, § 707(f), 104 Stat. at 2683. Under these factors, mandamus is warranted here.

### 1.     EPA's 18-month delay in correcting its immediately obvious error is unreasonable.

The first *TRAC* factor applies a "rule of reason" to agency inaction, *TRAC*, 750 F.2d at 80, although "[t]here is no per se rule as to how long is too long to wait for agency action." *In re American Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004). Williams promptly notified of EPA's error by letter dated April 20, 2022. (Add:25a-27a.) For EPA to take 18 months to correct the error of mistaking a trade name or "dba" as a corporate identity is unreasonable, especially given four ensuing events: (a) the October 1, 2022, deadline for issuing 2023 allocations; (b) Williams' letter dated December 12, 2022 (Add:35a-43a.); (c) RMS's letter

dated December 29, 2022 (Add:44a-47a.); and (d) the upcoming October 1, 2023,

deadline for issuing 2024 allocations.

### 2.     EPA's delay violates the APA's requirement to act within a "reasonable time" and the Clean Air Act's requirement for releasing allocations by October 1.

The second *TRAC* factor considers whether any statutory or regulatory criteria

indicate the speed within which an agency should act in the specific context at issue.

*TRAC*, 750 F.2d at 80. Here, the APA expressly requires EPA to act within a

"reasonable time," 5 U.S.C. § 555(b), and the October 1 deadline for the next year's

HFC allocations, 42 U.S.C. § 7675(e)(2)(D)(i), further infers a deadline to resolve

any pending issues for eligibility for the HFC program.

### 3.     Federal interests in equity require expediting this action.

The third *TRAC* factor considers whether human health and welfare warrant

expediting action where mere economic regulation might not. *TRAC*, 750 F.2d at 80.

The regulation of HFCs affects human health and welfare, but that understates the

non-economic issues here. Although Executive Orders do not generally create

actionable rights, it is worth noting that the discriminatory actions of EPA staff are

inconsistent with the commitment for EPA to consider impacts on communities of

color under both environmental policy generally, *see* Exec. Order 12,898, 59 Fed.

Reg. 7629 (Feb. 11, 1994), and climate policy specifically. *See* Exec. Order 14,008,

86 Fed. Reg. 7619 (Feb. 1, 2021). EPA staff should not have free reign to violate the

policy of the agency they serve. Although these Executive Orders do not create rights, they should guide this Court's exercise of its equitable powers.

**4.      No competing EPA activities displace this Court's review.**

The fourth *TRAC* factor considers the effect of expediting delayed action on agency activities of a higher or competing priority. *TRAC*, 750 F.2d at 80. Here, EPA already is scheduled to issue 2024 HFC allocations by October 1, 42 U.S.C. § 7675(e)(2)(D)(i), and getting the numbers correct at the outset—rather than needing to correct them—will make less work, not more work for EPA.

**5.      EPA's inaction irreparably harms Williams.**

The fifth *TRAC* factor considers the nature and extent of the interests prejudiced by delay. *TRAC*, 750 F.2d at 80. Here, EPA's delay could irreparably harm Williams by having EPA disburse Williams' HFC allocations to third parties (*i.e.*, the other participants in the HFC program). Once allocations are disbursed, EPA cannot issue those allocations to Williams. *See* 42 U.S.C. § 7675(e) (the total amount of allocations is set by statute). Irreparable harm makes mandamus appropriate. *In re Baluchi*, 952 F.3d 363, 368 (D.C. Cir. 2020) ("an irreversible injury that frustrates later appellate review").[11]

---

[11]      Although Williams will argue that this Court should preserve his allocations as interim relief under 5 U.S.C. § 705 if this EPA does not issue allocations to him for 2024 by the October 1, 2023, deadline, *see* note 3, *supra*, EPA presumably will oppose that motion.

28

### 6.    The Court should consider EPA's bad faith.

Although the sixth *TRAC* factor makes clear that courts need not find agency impropriety, *TRAC*, 750 F.2d at 80, this Court certainly can consider EPA's bad faith in refusing to respond to Williams' administrative petition. *See* Section III.B, *supra*.

### REASONS DECLARATORY RELIEF SHOULD ISSUE

Williams expeditiously notified EPA of the error of interpreting his HFC application as being on behalf of a corporation, but EPA has dragged its feet beyond all legal reason and human decency. Courts can reach merits issues at the threshold phase "where the question of jurisdiction is dependent on decision of the merits." *Land v. Dollar*, 330 U.S. 731, 735 (1947). Here, the availability of mandamus (*e.g.*, the clarity of Williams' entitlement to relief, whether a person can "do business" as a corporation) also go to the clear merits that EPA has proved unable to answer in almost 18 months. *See* Section I.B, *supra*. Because these issues resolve EPA's only basis for—erroneously—denying Williams' HFC application, making them "useful" here in deciding these issues, such that declaratory relief is appropriate. *See Tierney*, 718 F.2d at 456; *Vance*, 627 F.2d at 364 n.76. Petitioner Williams respectfully submits that this Court should declare the law between the parties on those issues, even if the Court denies mandamus.

### CONCLUSION

WHEREFORE, this Court should grant the petition for a writ of mandamus and—in addition or alternatively—the request for declaratory relief.

Dated: September 20, 2023            Respectfully submitted,

                                     /s/ Lawrence J. Joseph
                                     _____
                                     Lawrence J. Joseph, D.C. Bar #464777

                                     1250 Connecticut Ave, NW, Ste. 700-1A
                                     Washington, DC 20036
                                     Tel: 202-355-9452
                                     Fax: 202-318-2254
                                     Email: ljoseph@larryjoseph.com

                                     *Counsel for Petitioner Peter Williams*

# CERTIFICATE OF COMPLIANCE

1.      The foregoing document complies with the type-volume limitation of FED. R. APP. P. 21(d)(1) because the motion contains 6,562 words, excluding the parts of the document exempted from counting.

2.      The foregoing document complies with the typeface and type-style requirements of FED. R. APP. P. 21(d), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman 14-point font.

Dated: September 20, 2023          Respectfully submitted,


/s/ Lawrence J. Joseph
Lawrence J. Joseph, D.C. Bar #464777

1250 Connecticut Ave, NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Petitioner Peter Williams*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2023, I electronically filed the foregoing document— together with the addendum thereto—with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system and caused one true and correct copy of the foregoing document—together with the addendum thereto—to be served on the following by postage pre-paid U.S. Priority Mail:

Hon. Michael S. Regan
Administrator
Environmental Protection Agency
Ariel Rios Building (Mail Code 1101A)
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Jeffrey M. Prieto, Esq.
General Counsel
Environmental Protection Agency
Ariel Rios Building (Mail Code: 2310A)
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Sarah A. Buckley
Kimere J. Kimball
U.S. Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7411
Washington, D.C. 20044
sarah.buckley@usdoj.gov
kimere.kimball@usdoj.gov

In addition, I hereby certify that on September 20, 2023, I sent PDF courtesy copies of the foregoing document—except for this Certificate of Service—and the addendum via separate emails to the indicated email addresses.

/s/ Lawrence J. Joseph
Lawrence J. Joseph