**ORAL ARGUMENT NOT YET SCHEDULED**

Case No. 23-1269

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE D.C. CIRCUIT**

---

IN RE: PETER WILLIAMS

*Petitioner*

---

On Petition for Mandamus
Regarding Actions by Environmental Protection Agency

---

**RESPONDENTS' OPPOSITION TO PETITIONER PETER WILLIAMS'S
MOTION FOR INTERIM RELIEF**

---

Dated: September 27, 2023

TODD KIM
   *Assistant Attorney General*

SARAH BUCKLEY
KIMERE J. KIMBALL
   U.S. Department of Justice
   P.O. Box 7611
   Washington, DC 20044
   (202) 616-7554/514-2285
   Sarah.Buckley@usdoj.gov
   Kimere.Kimball@usdoj.gov
   *Counsel for Respondent*

*Of Counsel*:
Karen Bianco
   U.S. Environmental Protection
   Agency
   Office of General Counsel

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Respondents certify as follows:

### A.     Parties and Amici

The parties in Case No. 23-1269 are petitioner Peter Williams and respondents the U.S. Environmental Protection Agency and Michael Regan, in his official capacity as Administrator of the U.S. Environmental Protection Agency.

### B.     Rulings Under Review

The petition for mandamus seeks to compel EPA action on Williams's administrative petition for reconsideration of EPA's March 31, 2022 allocation of set-aside pool allowances under the AIM Act as described in a notice in the Federal Register: "Phasedown of Hydrofluorocarbons: Notice of 2022 Set-Aside Pool Allowance Allocations for Production and Consumption of Regulated Substances under the American Innovation and Manufacturing Act of 2020," 87 Fed. Reg. 19,683 (Apr. 5, 2022).

### C.     Related Cases

*Williams v. EPA, et al.*, Case No. 22-1314 challenges, *inter alia*, both EPA's purported delay in deciding Williams's administrative petition for reconsideration and EPA's March 31, 2022 allocation of set-aside pool allowances under the AIM Act as described in a notice in the Federal Register: "Phasedown of

Hydrofluorocarbons: Notice of 2022 Set-Aside Pool Allowance Allocations for

Production and Consumption of Regulated Substances under the American

Innovation and Manufacturing Act of 2020," 87 Fed. Reg. 19,683 (Apr. 5, 2022).

This Court dismissed Case No. 22-1314 for lack of jurisdiction.  Williams

petitioned for rehearing and rehearing en banc.  That petition is currently pending.

/s/ *Kimere J. Kimball*
Kimere J. Kimball
Counsel for Respondents

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF CONTENTS......................................................................... iii

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................2

   I.  The AIM Act ..........................................................................2

   II. The 2022-23 Framework Rule .................................................3

   III.The 2024-28 Framework Rule .................................................5

   IV. Procedural History .................................................................7

      A. EPA's Final Action on Williams's Application .....................7

      B. Post-Final Action Communications.....................................8

   V. Williams's Petition for Review, Case No. 22-1314........................10

   VI. Williams's Petition for Mandamus..........................................11

ARGUMENT .....................................................................................12

   I.  Williams Cannot Establish a Likelihood of Success on the Merits. ...............12

      A. This Court Lacks Jurisdiction under 42 U.S.C. § 7607 and the All Writs Act. ..................................................................................12

      B. Williams Cannot Establish Entitlement to the Requested Relief. ..............15

         1.   Williams Has No Clear Right to 133,333 2024 Allowances. ...............16

         2.   Williams Has Not Identified Any "Crystal Clear Legal Duty" of EPA. ..................................................................................17

         3.   Williams Has an Alternate Remedy at Law in Section 7604 ...............21

   II. The Balance of Hardships Favor of Denying Interim Relief.........................22

CONCLUSION ..................................................................................23

CERTIFICATE OF COMPLIANCE .......................................................25

CERTIFICATE OF SERVICE ..............................................................26

# TABLE OF AUTHORITIES

## CASES

*Clinton v. Goldsmith*,
   526 U.S. 529 (1999) .........................................................................12

*Humane Soc'y of the U.S. v. McCarthy*,
   209 F. Supp. 3d 280 (D.D.C. 2016) ...................................................15

*In re Core Commc'ns, Inc.*,
   531 F.3d 849 (D.C. Cir. 2008) .............................................17, 18, 19

*In re Flynn*,
   973 F.3d 74 (D.C. Cir. 2020) .......................................................14, 21

*In re Nat'l Nurses United*,
   47 F.4th 746 (D.C. Cir. 2022) .........................................16, 17, 19, 21

*MCI Telecomms. Corp. v. Fed. Commc'ns Comm'n*,
   627 F.2d 322 (D.C. Cir. 1980) ...........................................................14

*Mexichem Specialty Resins, Inc. v. EPA*,
   787 F.3d 544 (D.C. Cir. 2015) .....................................................11, 13

*New York Pub. Interest Research Group v. Whitman*,
   214 F. Supp. 2d 1 (D.D.C. 2002) .......................................................14

*New York Shipping Ass'n, Inc. v. Fed. Mar. Comm'n*,
   854 F.2d 1338 (D.C. Cir. 1998) ...........................................................1

*Sierra Club v. Browner*,
   130 F. Supp. 2d 78 (D.D.C. 2001),
   *aff'd*, 285 F.3d 63 (D.C. Cir. 2002) ...................................................14

*Sierra Club v. Thomas*,
   828 F.2d 783 (D.C. Cir. 1987) ...........................................................13

*Telecomms. Rsch. & Action Ctr. v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) .............................................................14

*Vietnam Veterans of Am. v. Shinseki*,
  599 F.3d 654 (D.C. Cir. 2010) .................................................................1

**STATUTES**

28 U.S.C. § 1651 ..............................................................................1, 10, 12

28 U.S.C. § 1651(a) .......................................................................................12

28 U.S.C. § 2201(a) .......................................................................................14

42 U.S.C. § 7604(a) .................................................... 1, 3, 11, 12, 13, 15, 21

42 U.S.C. § 7607(b)(1) ..........................................................................3, 5, 12

42 U.S.C. § 7675 ..............................................................................................2

42 U.S.C. § 7675(b)(3) ....................................................................................2

42 U.S.C. § 7675(e) ..........................................................................................2

42 U.S.C. § 7675(e)(2)(C) .............................................................................22

42 U.S.C. § 7675(e)(2)(D) ...............................................................................2

42 U.S.C. § 7675(e)(2)(D)(i) .......................................................................2, 3

42 U.S.C. § 7675(e)(2)(D)(ii) ..........................................................................2

42 U.S.C. § 7675(e)(3) .....................................................................................2

42 U.S.C. § 7675(k)(1)(C) ...........................................................3, 11, 12, 13, 15

Pub. L. No. 116-260, Div. S, § 103, 134 Stat. 1182, 2255–71 (2020) .......2

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. § 84.5(b) ...........................................................................................4

40 C.F.R. § 84.5(d) ...................................................................23

40 C.F.R. § 84.7(b)(3)(ii) ...........................................................6

40 C.F.R. § 84.9(a) .....................................................................5

40 C.F.R. § 84.9(b)(3) .................................................................5

40 C.F.R. § 84.11(b) ...............................................................2, 16

40 C.F.R. § 84.11(b)(1) ...........................................................6, 16

40 C.F.R. § 84.11(b)(2) ...............................................................5

40 C.F.R. § 84.11(b)(5) ...............................................................6

40 C.F.R. § 84.11(b)(6) ...............................................................6

40 C.F.R. § 84.13 ........................................................................6

40 C.F.R. § 84.15(c)(2) ...........................................................4, 19

40 C.F.R. § 84.15(d)(1) ..............................................................21

40 C.F.R. § 84.15(d)(2) ................................................................4

40 C.F.R. § 84.15(e)       5

## FEDERAL REGISTER

86 Fed. Reg. 55116 (Oct. 5, 2021) .....................................3, 4, 5

86 Fed. Reg. 55841 (Oct. 7, 2021)........................................20

87 Fed. Reg. 19683 (Apr. 5, 2022) (Addm.20a-24a) ...........i, ii, 8, 10

87 Fed. Reg. 61314 (Oct. 1, 2022)........................................9, 16

88 Fed. Reg. 46836 (July 20, 2023)................................................5, 16, 23

**LEGISLATIVE HISTORY**

S. Rep. No. 101-228, at 374 (1989) .............................................13, 14, 15

**INTRODUCTION**

Because this Court lacks jurisdiction to consider Williams's petition for mandamus and because Williams has failed to demonstrate a likelihood of success on the merits or that the balance of equities support his requested injunction, the Court should deny Williams's motion for interim relief.

This Court already held it lacks jurisdiction to consider Petitioner Peter Williams's assertion that EPA has unreasonably delayed determination of his administrative petition for reconsideration (hereinafter "administrative petition"). In its order issued on July 7, 2023, dismissing an earlier case brought by Williams, this Court explicitly informed Williams that he must assert any unreasonable delay claim in district court pursuant to 42 U.S.C. § 7604(a). *Williams v. EPA*, Case No. 22-1314, Doc. No. 2006886. Notably, in opposing dismissal of his initial case, Williams also already specifically—and unsuccessfully—invoked the All Writs Act, 28 U.S.C. § 1651. Case No. 22-1314, Doc. No. 1995170, at 14-15. Despite the fact that Williams is *also* currently petitioning for rehearing and rehearing en banc of that decision, Case No. 22-1314, Doc. No. 2013485, he now has brought this action in an obvious attempt at a second bite of the apple.[1] And now, on the

---

[1] Indeed, the above-captioned litigation violates "the general rule proscribing the splitting of a cause of action." *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 660 (D.C. Cir. 2010); *New York Shipping Ass'n, Inc. v. Fed. Mar. Comm'n*, 854 F.2d 1338, 1352 (D.C. Cir. 1998).

eve of a statutorily mandated deadline for EPA action, Williams asks this Court to force EPA to recalculate 2024 hydrofluorocarbon ("HFC") consumption allowances under the American Innovation in Manufacturing Act ("AIM Act"), 42 U.S.C. § 7675 for the *entire market*, despite the fact that Williams is not eligible for any 2024 allowances.[2]

Williams's motion should be denied.

## BACKGROUND

### I.    The AIM Act

The AIM Act, enacted on December 27, 2020, Pub. L. No. 116-260, Div. S, § 103, 134 Stat. 1182, 2255–71 (2020) (codified at 42 U.S.C. § 7675), mandates the phasedown of HFC production and consumption, which, by statutory definition, includes HFC importation. 42 U.S.C. § 7675(b)(3), (e). The statute requires EPA to establish "an allowance allocation and trading program," whereby EPA issues allowances for production and consumption to be used the following calendar year. *Id.* § 7675(e)(2)(D), (3). An allowance is a limited authorization for the production or consumption of a regulated substance. *Id.* § 7675(e)(2)(D)(ii). The number of available allowances for the production or

---

[2] Although Williams asserts that EPA will allocate all allowances for 2024 through 2028 in its next allocation, Mot., Doc. No. 2018310, at 4, this is incorrect. EPA *only* issues allowances one year at a time. 42 U.S.C. § 7675(e)(2)(D)(i); 40 C.F.R. § 84.11(b). Pursuant to its statutory mandate, EPA intends to issue the 2024—and only 2024—consumption allowances on Friday, September 29, 2023.

consumption of HFCs decreases over the years based on the statutory phasedown schedule. *Id.* § 7675(e)(2)(D)(i).

The AIM Act provides that the Clean Air Act's ("CAA") judicial review provision at 42 U.S.C. §§ 7604 and 7607 "shall apply to" actions under the AIM Act "as though [Section 7675] were expressly included in title VI" of the CAA. 42 U.S.C. § 7675(k)(1)(C). Section 7607(b)(1) provides that petitions for review of "nationally applicable" *final* actions of EPA may be filed in this Court, whereas section 7604 provides that "[t]he district courts of the United States shall have jurisdiction to compel...agency action unreasonably delayed...." *Id*. § 7604(a).

## II.    The 2022-23 Framework Rule

On September 23, 2021, following public notice and comment, EPA signed the 2022-23 Framework Rule establishing, *inter alia*, a methodology for allocating allowances for calendar years 2022 and 2023. *Phasedown of Hydrofluorocarbons: Establishing the Allowance Allocation and Trading Program Under the American Innovation and Manufacturing Act*, 86 Fed. Reg. 55116, 55117, 55143-48 (Oct. 5, 2021) ("2022-23 Framework Rule").[3] This rulemaking established three types of allowances: production allowances, consumption allowances, and application-

---

[3] Any challenge to that methodology itself must therefore have been brought in a challenge to the 2022-23 Framework Rule within 60 days of publication of that rule. 42 U.S.C. § 7607(b)(1).

specific allowances. *Id.* at 55142. Importing HFCs requires expending either consumption allowances or application-specific allowances. *Id.*; *see* 40 C.F.R. § 84.5(b).

EPA also set aside a small pool of allowances ("set-aside allowances") to be issued, as is relevant here, to companies that "are newly importing regulated substances, do not share corporate or common ownership, corporate affiliation in the past five years, or familial relations with entities receiving allowances through this rule." 40 C.F.R. § 84.15(c)(2). EPA refers to that category as "new market entrants." 86 Fed. Reg. at 55155–56. EPA explained that set-aside allowances for new market entrants would be limited "to owners of companies." *Id*. at 55156. Applicants were required to "provide the relevant Agency official with the following information by November 30, 2021" to be eligible for consideration, including, *inter alia*: (1) "the complete ownership of the company (with percentages of ownership);" (2) "[t]he date of incorporation and State in which the company is incorporated;" and (3) the "State license identifier[.]" 40 C.F.R. § 84.15(d)(2).

EPA explained that it would "review all relevant data, conduct follow-up verification as needed, and issue allowances to applicants that meet the applicable criteria" for the "calendar-year 2022 and 2023 [set-aside] allowances...no later than March 31, 2022," with the 2022 new-market-entrant allowances issued on that date

4

and the same number of new-market-entrant allowances issued for 2023 on "October 1, 2022," with all other 2023 allowances. *Id*. § 84.15(e); 86 Fed. Reg. at 55156, 55160.

### III.    The 2024-28 Framework Rule

On July 14, 2023, following public notice and comment, EPA signed the 2024-28 Framework Rule establishing, *inter alia*, a methodology for allocating allowances for calendar years 2024 through 2028. *Phasedown of Hydrofluorocarbons:  Allowance Allocation Methodology for 2024 and Later Years*, 88 Fed. Reg. 46836 (July 20, 2023) ("2024-28 Framework Rule").[4]  Under this methodology, six statutorily specified uses of HFCs continue to receive priority access to the pool of available allowances.  40 C.F.R. § 84.9(b)(3). Production and consumption allowances next are allocated through a general pool of allowances to companies that historically produced or imported HFCs between 2011 and 2019 and continued to do so in 2021, 2022, or both.  *Id.* §§ 84.9(a), 84.11(b)(2); 88 Fed. Reg. at 46842-43.

---

[4] Any challenge to the methodology by which 2024 through 2028 allowances are allocated thus must have been brought in a challenge to the 2024-28 Framework Rule within 60 days of publication of that rule, *i.e.*, by September 18, 2023.  42 U.S.C. § 7607(b)(1).  Although challenges to the 2024-28 Framework Rule are currently pending, *see IGas Holdings, Inc., et al.*, *v. EPA*, Case No. 23-1261, Williams did not bring any challenge to the 2024-28 Framework Rule.

Under the 2024-28 Framework Rule, EPA explained that, "[f]or new market entrants that were allocated allowances pursuant to § 84.15(e)(3)," EPA calculates each entity's consumption allowances each calendar year by first "tak[ing] the allowances allocated for calendar year 2023 and divid[ing] that value by the proportion of calendar year 2023 consumption allowances received by general pool allowance holders" for 2023.  40 C.F.R. § 84.11(b)(1).  Second, for non-new-market-entrants, EPA calculates the average of each entity's highest three years of consumption from 2011 through 2019.  *Id*. § 84.11(b)(2).  Third, EPA adds together the total values for all entities at Step 1 and Step 2 to calculate the total general pool, and then determines each entity's percentage of that total pool.  *Id*. § 84.11(b)(5).  Fourth, EPA then takes the total consumption allowances available for the year—181,522,990 for each year of 2024 through 2028, *see id*. § 84.7(b)(3)(ii)—and subtracts the application-specific allowances for the year under § 84.13 to obtain the total amount of general pool consumption allowances.  *Id*. § 84.11(b)(6).  Finally, EPA determines each individual entity's consumption allowance by multiplying the entity's individual percentage calculated at Step Three by the total general pool allowances calculated at Step Four.

## IV.    Procedural History

### A. EPA's Final Action on Williams's Application

On December 2, 2021, Williams applied for new market entrant allowances as "Peter Williams d/b/a New Era Group."  Addm.11a-16a.[5]  Despite EPA's repeated requests, Williams did not provide "the complete ownership of the company (with percentages of ownership)" "the date of incorporation and State in which the company is incorporated," or the "State license identifier," and instead responded that he was applying "as an individual."  Ex. 1 at 2.  When EPA reviewed public information regarding the corporate structure and relationships of New Era Group (as EPA did for every applicant), EPA determined New Era Group was affiliated with another allowance holder, RMS of Georgia, "as recently as 2019," based on "[p]ublic data available to the Agency from the State of Georgia Secretary of State...."  Addm.18a.  On March 31, 2022, EPA denied Williams's application on two independent grounds, both because the application had failed to provide all information required by 40 C.F.R. § 84.15, and because "New Era Group does 'share corporate or common ownership, corporate affiliation in the past five years, or familial relations' with an entity receiving allowances through this rule, specifically RMS of Georgia."  Addm.18a-19a.

---

[5] "Addm." refers to the Addendum filed at Doc. No. 2018221.

On April 5, 2022, the Federal Register published a notice of EPA's March 31, 2022, actions on each application for set aside allowances. Addm.20a-24a. EPA gave notice that it had denied seven applications for new-entrant allowances, including an application from "Peter Williams DBA New Era Group, because they are ineligible under 40 CFR 84.15(c)(2)." Addm.21a. EPA further explained that the denied applications "were ineligible for at least one of the following reasons: (1) [d]id not submit complete applications; (2) were not newly importing regulated substances; or (3) shared corporate or common ownership, corporate affiliation in the past five years, or familial relations with entities receiving allowances on October 1, 2021." Addm.21a-22a. The notice stated that "petitions for judicial review of this action must be filed...within 60 days from the date this final action is published in the Federal Register." Addm.24a. No petitions for review were filed within the statutory timeframe.

## B. Post-Final Action Communications

On April 1, 2022, Williams and an EPA staff member exchanged emails regarding Williams's application. Ex. 2 at 1. On April 20, 2022, EPA received a letter from J. Gordon Arbuckle, Esq., "on behalf of Peter Williams (dba The New Era Group) in response to [EPA's] letter dated March 31, 2022." Addm.25a. The letter then asserted that EPA had erred in determining that Williams's application for "Williams d/b/a New Era Group" shared a corporate affiliation with RMS of

8

Georgia and "request[ed]...a complete copy of the administrative record on this matter...."  Addm.25a.

On April 26, 2022, because EPA had been in communications directly with Williams, and because Arbuckle had sought the administrative record, which included potentially sensitive and/or confidential business information, EPA forwarded a copy of the Arbuckle letter to Williams and asked for confirmation that Arbuckle was "representing [Williams] and sharing [Williams's application information with Arbuckle] is OK and appropriate."  Ex. 2 at 1.  EPA received no additional correspondence from either Williams or Arbuckle.

October 1, 2022, EPA issued 2023 allowances.  *See* 87 Fed. Reg. 61314, 61316.  Williams received no 2023 allowances.  *Id*

On December 12, 2022, Williams, through counsel Lawrence Joseph, administratively petitioned EPA for reconsideration of EPA's March 22, 2022, denial of his new-market-entrant application, Addm.35a, and simultaneously petitioned for review of the March 2022 denial and EPA's 2023 allowance allocation decision in this Court.  Pet., Case No. 22-1314, Doc. No. 1977379. Because the substance of the March 2022 denial has been the subject of litigation since EPA's receipt of the December 12, 2022, letter, EPA has not responded to that letter.  Ex. 3 ¶ 4.

## V.    Williams's Petition for Review, Case No. 22-1314

Williams's December 12, 2022, petition for review challenged: (1) EPA's decision denying Williams's new-market-entrant application dated March 31, 2022 (Addm.18a); (2) EPA's April 5, 2022, Federal Register notice publishing notice of EPA's March 31, 2022, action denying Williams's application (Addm.20a); (3) the letter Arbuckle sent EPA on April 20, 2022 (Addm.25a); (4) an email an EPA staff member sent to Williams on April 26, 2022 (Ex. 2); and (5) EPA's 2023 Allocation Action, which allocated HFC allowances to those companies participating in the HFC program (Addm.30a).  Pet., Case No. 22-1314, Doc. No. 1977379.

EPA moved to dismiss Williams's petition for lack of jurisdiction.  Mot. Dismiss, Case No. 22-1314, Doc. No. 1989936.  In response, Williams clarified: (1) by referencing the Arbuckle letter, Williams was challenging the EPA's purported delay in responding to his request for reconsideration of the March 2022 denial of his new-market-entrant application pursuant to both the CAA (as incorporated by the AIM Act) and Administrative Procedures Act ("APA"), Opp'n, Case No. 22-1314, Doc. No. 1995170, at 10-14, *and* (2) Williams asserted the D.C. Circuit could compel EPA to grant his administrative petition under the All Writs Act, 28 U.S.C. § 1651, *id*. at 14-15.

10

On July 7, 2023, this Court dismissed all of Williams's claims for lack of jurisdiction.  Order, Case No. 22-1314, Doc. No. 2006886.  The Court explained that Williams's challenge to the denial of his 2022 new-market-entrant application was untimely.  *Id*. at 2.  The Court explained that Williams lacked standing to challenge EPA's 2023 allowance allocation because he "failed to demonstrate any injury 'fairly traceable' to that agency action, as opposed to EPA's [denial of Williams's 2022 new-market-entrant application]."  And, most critically to this action, the Court explicitly held that "[t]o the extent Williams claims that EPA has unreasonably delayed in ruling on his reconsideration petition, jurisdiction over that claim lies in the district court." *Id*. (citing 42 U.S.C. §§ 7604(a); 7675(k)(1)(C); *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 533 n.6 (D.C. Cir. 2015) (hereinafter "*Mexichem*")).

On August 21, 2023, Williams petitioned for rehearing and rehearing en banc, challenging the Court's jurisdictional determination and seeking the Court's consideration of the substance of the March 2022 denial.  Pet. Rehearing, Case No. 22-1314, Doc. No. 2013485.  That petition remains pending.

## VI.    Williams's Petition for Mandamus

On September 21, 2023, Williams filed the above-captioned action, asserting the exact same claim of delay in deciding his administrative petition that this Court already rejected in Case No. 22-1314.  *Compare* Pet., Doc. No. 2018221 *with*

Opp'n, Case No. 22-1314, Doc. No. 1995170; Order, Case No. 22-1314, Doc. No. 2006886 at 2.

## ARGUMENT

I.    **Williams Cannot Establish a Likelihood of Success on the Merits.**

A. **This Court Lacks Jurisdiction under 42 U.S.C. § 7607 and the All Writs Act.**

This Court already has held that it lacks jurisdiction over Williams's assertion of unreasonable delay on his administrative petition.  Order, Case No. 22-1314, Doc. No. 2006886 at 2.  The CAA's jurisdictional provisions (incorporated into the AIM Act) explicitly bifurcate courts' jurisdiction over different types of cases, with section 7607 affording this Court jurisdiction over petitions for review of "*final* action" by EPA, and section 7604(a) giving district court's jurisdiction over cases to "compel...[EPA] action unreasonably delayed...." 42 U.S.C. §§ 7604(a), 7607(b)(1) (emphasis added), 7675(k)(1)(C).  Additionally, the All Writs Act, 28 U.S.C. § 1651, only allows a court to "issue[] process 'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999) (quoting 28 U.S.C. § 1651(a)).  Accordingly, when Williams presented this exact same challenge to this exact same delay, invoking both section 7607 and the All Writs Act, this Court explicitly held that it lacks jurisdiction to consider any purported delay in EPA's decision on his administrative petition.  Order, Case No. 22-1314, Doc. No. 2006886 at 2.  It

held: "To the extent Williams claims that EPA has unreasonably delayed in ruling on his reconsideration petition, jurisdiction over that claim lies in the district court."  Order, Case No. 22-1314, Doc. No. 2006886 at 2 (citing 42 U.S.C. §§ 7604(a), 7675(k)(1)(C); *Mexichem*, 787 F.3d at 553 n.6).[6]

Remarkably, Williams does not even mention that this Court already has directly rejected the exact same jurisdictional arguments regarding the exact same unreasonable delay claim that he advances here.  *See* Mot. at 6-15.  Williams twice dismisses this Court's prior order as merely related to the timeliness of his challenge to the denial of his new-market-entrant application, *id*. at 6 n.1 & 11, ignoring the Court's holding regarding his unreasonable delay claim.  But it is indisputable that Williams has already asserted the exact same claim with the same jurisdictional statutes, and this Court already has rejected it.  *Compare* Mot. at 6-15 *with* Opp'n, Case No. 22-1314, Doc. No. 1995170, at 10-15.

Williams argues this Court has jurisdiction where "adjudication of a challenge to EPA inaction would effectively require a court to overturn final action previously taken by the EPA."  Mot. at 8 (quoting S. Rep. No. 101-228, at 374

---

[6] Although this Court held in *Sierra Club v. Thomas*, 828 F.2d 783, 795-96 (D.C. Cir. 1987), that it could compel EPA to take unreasonably delayed final action under the CAA pursuant to the All Writs Act, "Congress in the 1990 Amendments to the [CAA] abrogated *Thomas*'s jurisdictional holding and shifted to the district court the power to compel EPA to act."  *Mexichem*, 787 F.3d at 553 n.6. Cir. 2015).

(1989)).  But this argument fundamentally miscomprehends the nature of an unreasonable delay claim.  Although Williams attempts to twist his petition for mandamus to compel EPA to render a *decision* on his administrative petition into a request that EPA render *the specific decision he wants*, neither the CAA nor even the APA authorize that relief.  Courts routinely have held that, in claims of unreasonable delay, the CAA "does not allow...courts to address the content of EPA's conduct, issue substantive determinations of its own, or grant other forms of declaratory relief."  *Sierra Club v. Browner*, 130 F. Supp. 2d 78, 90 (D.D.C. 2001) *aff'd*, 285 F.3d 63 (D.C. Cir. 2002); *New York Pub. Interest Research Group v. Whitman,* 214 F.Supp.2d 1, 3-4 (D.D.C. 2002).  Similarly, this Court has explained that unreasonable delay claims can be brought under the APA prior to final agency action because such claims present "no need for the court to consider the merits of the issue before the agency."  *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984); *cf. In re Flynn*, 973 F.3d 74, 79 (D.C. Cir. 2020) (en banc) (noting writs of mandamus do not issue to district courts to "decide an *undecided* motion *in a particular way*" (emphasis in original)).[7]  Because the most Williams

---

[7] Although Williams cites *MCI Telecomms. Corp. v. Fed. Commc'ns Comm'n*, 627 F.2d 322, 345 (D.C. Cir. 1980), for the proposition that this Court has "discretion" under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) to decide whether to supplant its judgment for EPA's in determination of a petition in the first instance or "remand[ing]" to the matter to EPA, Mot. at 10, neither *MCI* nor 28 U.S.C. § 2201(a) support this theory.  Indeed, *MCI* did not even address the Declaratory Judgement Act claim.

14

could receive through an unreasonable delay claim is simply a deadline by which EPA must decide his administrative petition, this litigation could not "effectively require [the] court to overturn" any "final action previously taken by the EPA," S. Rep. No. 101-228, at 374, such that this Court could exercise jurisdiction here.

And, although Williams asserts that he can challenge unreasonable delay via the APA where the AIM Act and CAA have not specifically superseded that statute, Mot. at 13-15, the CAA *has* superseded APA jurisdiction for unreasonable delay claims, and the AIM Act explicitly incorporates that provision. *See* 42 U.S.C. §§ 7604(a), 7675(k)(1)(C); *Humane Soc'y of the U.S. v. McCarthy*, 209 F. Supp. 3d 280, 284-86 (D.D.C. 2016) (holding CAA, not APA, provides jurisdiction for claims of unreasonable delay in deciding administrative petitions).

In short, Williams cannot establish a likelihood of success in this action because this Court already has held it lacks jurisdiction over his claim.

**B. Williams Cannot Establish Entitlement to the Requested Relief.**

Even if this Court had jurisdiction (and it does not), Williams does not even address—much less establish—any likelihood of success on the merits of his mandamus petition. *See* Mot. at 15-20. Although he argues EPA should have decided his *2022 application* differently, as explained in Pt.I.A, *supra*, that is not the appropriate consideration on a mandamus petition asserting unreasonable delay, much less in an emergency motion for interim relief. When considering the

15

merits of a request for mandamus relief under the All Writs Act, courts consider (1) whether "the plaintiff has a clear right to relief;" (2) whether "the defendant has a clear duty to act"; and (3) whether "there is no other adequate remedy available" to the petitioner. *In re Nat'l Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022). Williams does not, and cannot, establish these elements.

## 1. Williams Has No Clear Right to 133,333 2024 Allowances.

Williams does not—and cannot—establish a right to *any* 2024 allowances, much less a "clear right" to the 133,333 2024 allowances he seeks as emergency relief. *Id*. As set forth in the 2024-28 Framework Rule (which Williams did not, and cannot now, challenge), new market entrants are allocated allowances based on the number of allowances they received in calendar year *2023*. 40 C.F.R. § 84.11(b)(1). Williams received no allowances in calendar year 2023, 87 Fed. Reg. at 61316-17, and thus, he is not eligible for 2024 allowances. In other words, even if, hypothetically, EPA were to reconsider and grant Williams's 2022 application, Williams still would not have any "clear right" to 2024 allowances because he did not receive 2023 allowances. *In re Nat'l Nurses United*, 47 F.4th at 752 n.4.[8]

---

[8] It is also unclear how Williams identified 133,333 as the number of allowances EPA should be forced to set aside. *See* Mot. at 4 (citing 88 Fed. Reg. at 46840). The cited page in the Federal Register offers no support for this number. Moreover, 2024 allowances are calculated through a complex formula involving a number of variables, including data regarding other entities' recent and historical importation activities. 40 C.F.R. § 84.11(b).

16

**2. Williams Has Not Identified Any "Crystal Clear Legal Duty" of EPA.**

Reading Williams's motion liberally, Williams suggests EPA has a legal duty (1) to award Williams 133,333 2024 allowances, (2) to decide his administrative petition, and/or (3) to decide the administrative petition in his favor. But EPA does not have a "crystal clear legal duty" to perform *any* of these actions. *In re Nat'l Nurses United*, 47 F.4th at 752.

1. Williams cannot establish that that EPA "has a crystal clear legal duty" to award Williams 2024 allowances. As explained in Pt.I.B.1, *supra*, the regulations—which are not challenged in this action—explicitly preclude Williams receiving 2024 allowances. EPA thus has no duty whatsoever award, or even set aside, allowances for Williams.

2. EPA also does not have a "crystal clear legal duty" to act on Williams's administrative petition at this time. *In re Nat'l Nurses United*, 47 F.4th at 752. As this Court has explained, "[t]he writ remains 'reserved only for the most transparent violations of a clear duty to act." *Id*. Although EPA does not dispute that it has a duty to decide Williams's administrative petition, where (as here) Congress has not set a specific timeframe for that action, the question becomes "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). Courts consider a variety of factors in assessing the reasonableness of an agency's delay. *Id*.

Here, where Congress did not specify a deadline and EPA's purported delay results from Williams's own actions, the delay cannot be considered "so egregious as to warrant mandamus." *Id*. Although Williams argues that his administrative petition has been pending since EPA received the Arbuckle letter on April 20, 2022, Mot. at 21, this is misleading. EPA immediately responded to that letter by asking Williams to confirm that Arbuckle represented him and authorize EPA to share information with Arbuckle, given that Arbuckle had requested the administrative record, which contained potentially sensitive information. Ex. 2 at 1. *Williams* failed to respond to EPA for *nearly eight months*, then simultaneously sought reconsideration of the March 2022 denial *and* petitioned for review of that same decision in this Court on December 12, 2022. Addm.35a; Pet., Case No. 22-1314, Doc. No. 1977379.

Although nine months have passed since the December 12 letter, this delay is again delay of Williams's own making because of his simultaneous petition for review. Given that Williams explicitly challenged EPA's March 2022 denial in the petition for review (despite the Court's obvious lack of jurisdiction due to the untimeliness of his petition), EPA reasonably is awaiting the Court's ultimate decision on that litigation before responding to the administrative petition. Ex. 3 ¶ 4; Pet., Case No. 22-1314, Doc. No. 1977379. Given Williams's own actions and inaction, the timeframe in which Williams's administrative petition has been

pending cannot be considered "egregious." *In re Core Commc'ns, Inc.*, 531 F.3d at 855.

Furthermore, consideration of the "the nature and extent of the interests prejudiced by delay" further demonstrates EPA's reasonableness. *Id*. Delay in this matter—at most—impacts Williams's "economic" interests rather than any "human health" or "welfare." *Id*. But Williams has no clear economic interest in any decision on his administrative petition because, as explained in Pt.I.B.1, *supra*, even if successful, he still will not be entitled to 2024 allowances. Accordingly, Williams does not—and cannot—establish that EPA has any "crystal clear duty" to act on his administrative petition immediately.

3. Finally, Williams cannot establish that EPA has "crystal clear" duty to grant his March 2022 application. *In re Nat'l Nurses United*, 47 F.4th at 752. EPA reasonably concluded, based on the information then available, that the application did not supply information required by EPA's regulations, 40 C.F.R. § 84.15(c)(2), and that the applicant—"Peter Williams dba New Era Group"— shared corporate affiliation with an entity that already received allowances, RMS of Georgia.

In December 2021, EPA received a new-market-entrant application from "Peter Williams dba New Era Group." Addm.11a-17a. The application used "New Era Group, Inc." letterhead and listed Williams—using an email address

@NewEraGroupInc.com—as the company owner.  Addm.11a-12a.  EPA reached out to Williams regarding his incomplete application *four* times in February 2022 before Williams responded.  Ex. 1.  Williams finally responded to EPA's inquiries on February 22, 2022, attaching a short memorandum stating the application "was filed as an individual," and that there was no "proof of corporate structure" because "there is none for myself as an individual."  *Id*. at 3.  Williams provided no explanation for the application's identification of "New Era Group" or the relationship between Williams, New Era Group, and New Era Group, *Inc*.

Additionally, as it did for all applications, EPA consulted public records for more information about "New Era Group."  Ex. 4 ¶ 5.  Georgia state records revealed Williams had incorporated "New Era Group, Inc." in Georgia with Kenneth M. Ponder, president of RMS of Georgia, LLC, an entity already receiving HFC allowances.  *See* Ex. 2 at 3-6; 86 Fed. Reg. 55841, 55842 (Oct. 7, 2021).  The records identified Williams as CEO and Ponder as CFO.  Ex. 2 at 3-6.

Based on that information and the limited information Williams submitted, EPA determined that Williams's application did not meet the regulatory requirements to receive allowances as a new market entrant.  EPA concluded that the relationship between New Era Group, Inc. and RMS of Georgia, LLC "equates to corporate affiliation in the past five years with an entity receiving allowances."  Addm.18a.  And EPA concluded that the application did not provide sufficient

information to show "complete ownership" or other identifying information for the company.  Addm.19a.

Although Williams argues that EPA should consider information he submitted after EPA's denial, Mot. at 15-20, he cannot demonstrate that EPA has a "crystal clear legal duty" to do so.  *In re Nat'l Nurses United*, 47 F.4th at 752.  The regulations explicitly provide that Williams was required to submit all relevant information "by November 30, 2021, to be eligible for consideration."  40 C.F.R. § 84.15(d)(1).  Accordingly, Williams cannot point to any "crystal clear legal duty" EPA would have to consider additional information, much less to grant his administrative petition and 2022 application.

### 3.  Williams Has an Alternate Remedy at Law in Section 7604

Finally, Williams cannot establish entitlement to invoke the All Writs Act because he has an alternative remedy.  *In re Flynn*, 973 F.3d at 78 ("[T]he writ of mandamus should issue only if...the party seeking issuance of the writ has no other adequate means to attain the relief he desires.").  As this Court explicitly instructed Williams, he can challenge EPA's purported delay in district court under 42 U.S.C. § 7604(a).  Order, Case No. 22-1314, Doc. No. 2006886, at 2.  Accordingly, Williams cannot establish a likelihood of success on his mandamus petition.

21

## II.    The Balance of Hardships Favor of Denying Interim Relief

Finally, Williams has not established that the balance of hardships support interim relief.  Williams would suffer no hardship from the Court denying his request that EPA set aside 133,333 2024 allowances because, as discussed in Pt.I.B.1, *supra*, he is not entitled to those allowances.  And the fact that this Court has already dismissed a challenge to EPA's denial of his application as untimely demonstrates the lack of any entitlement to relief.

In contrast, the public interest would suffer greatly if the Court ordered EPA—on the eve of its statutory deadline—to recalculate the entire pool of allowances.  EPA has been diligently working on this allowance allocation for the past year.  Ex. 3 ¶ 5.  It is extremely unlikely EPA could redo all calculations, sufficiently verify the calculations' accuracy, and edit all notices in which the calculations appear in the *hours* remaining before October 1, 2023.  *Id*. ¶ 7.

Delaying the issuance of allowances past October 1, 2023, would cause substantial harm to the HFC market, including the critical applications they serve. The 2022 and 2023 allowances held consumption of HFCs at 90% of the baseline, but 2024 is the first year that consumption will be reduced to *60%* of the baseline. 42 U.S.C. § 7675(e)(2)(C).  This significant reduction—mandated by Congress— will require substantial planning for industries, who need to know the full amount of allowances to which they will have access as soon as possible.  Ex. 3 ¶ 8.

22

Planning is particularly critical for application-specific allowance holders, who

receive HFC allowances for industries including those providing critical medical

and safety equipment and need to know the specific number of allowances they

will receive so they can begin planning contracts for the 2024 calendar year to

ensure availability of sufficient supplies of these products. *Id*. ¶ 8. Additionally,

EPA authorizes allowance holders to begin transferring and selling allowances as

soon as they are issued to ensure greater market stability; delaying issuance of the

allowances would diminish that stabilizing effect. *Id*. ¶ 9; 40 C.F.R. § 84.5(d); 88

Fed. Reg. at 46857.

In short, the balance of equities does not support requiring EPA—at this late

date—to recalculate 2024 consumption allowances to set aside 133,333 for

Williams.

## CONCLUSION

For the foregoing reasons, the Court should deny Williams's motion for

interim relief.

Respectfully submitted,

September 27, 2023

TODD KIM
  *Assistant Attorney General*

 */s/ Kimere J. Kimball*
KIMERE J. KIMBALL
SARAH BUCKLEY

*Of Counsel*:
KAREN BIANCO
  U.S. EPA Office of General
  Counsel

  U.S. Department of Justice
  Env't & Natural Resources Div.

23

P.O. Box 7611
(202) 616-7554 (Buckley)
(202) 514-2285 (Kimball)
Sarah.Buckley@usdoj.gov
Kimere.Kimball@usdoj.gov

*Counsel for Respondents*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing opposition complies with the requirements of

Fed. R. App. P. 27(d) because it contains 5,196 words and is formatted in double-

spaced, 14-point Times New Roman font.

Dated:  September 27, 2023                    Respectfully submitted,

                                              /s/ *Kimere J. Kimball*
                                              Kimere J. Kimball

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2023, I filed the foregoing opposition via the Court's CM/ECF system, which will provide electronic notice to all registered counsel.

*/s/ Kimere J. Kimball*
Kimere J. Kimball